# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN HARRIS, | CASE NO. 1:05-cv-00003-OWW-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CLAIMS |
| v. | (Doc. 64) |
| KIM, et al., | OBJECTIONS DUE WITHIN 30 DAYS |
| Defendants. | |

Plaintiff Darren Harris ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is currently incarcerated at the California Men's Colony in San Louis Obispo, California. However, the events described in Plaintiff's complaint took place while he was incarcerated at the California State Prison in Corcoran, California ("CSP-Corcoran"). Plaintiff is suing under Section 1983 for the violation of his rights under the Eighth Amendment. Plaintiff names Skribner (warden), Williams (food manager), Lowden (correctional captain), Kim (chief medical officer), Klarich (physician), Jane Doe (medical assistant), and Olivarria (culinary custody staff) as defendants. For the reasons set forth below, the Court will recommend that Plaintiff's fourth amended complaint be dismissed, without leave to amend, for failure to state any claims upon which relief can be granted under Section 1983.

**I.      Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

**II.   Background**

    **A.   Procedural Background**

Plaintiff filed the original complaint in this action on January 3, 2005. (Doc. #1.) On August 13, 2007, the Court determined that plaintiff's original complaint stated cognizable claims against Defendants Olivarria, Castro, Molina, Williams, Clark, Kim, Klarich, and Lowden. However, on September 14, 2007, Plaintiff filed a motion requesting leave to file an amended complaint. (Doc. #14.) Plaintiff filed his first amended complaint on November 5, 2007. (Doc. #22.) On December 6, 2007, the Court screened Plaintiff's first amended complaint and determined that it stated some

cognizable claims and some non-cognizable claims. (Doc. #27.) Plaintiff was again given the option to file an amended complaint or to proceed only on the claims found to be cognizable.

Plaintiff filed a second complaint on June 30, 2008. (Doc. #45.) On March 16, 2009, Plaintiff's second amended complaint was dismissed for failure to comply with the Federal Rules of Civil Procedure. (Doc. #53.) Plaintiff was given a third opportunity to file an amended complaint. Plaintiff filed his third amended complaint on April 16, 2009. (Doc. #54.) On March 10, 2010, the Court dismissed Plaintiff's third amended complaint for failing to state any claims. (Doc. #59.)

Plaintiff filed his fourth amended complaint on May 24, 2010. (Doc. #64.) This action proceeds on Plaintiff's fourth amended complaint.

**B.    Factual Background**

Plaintiff alleges that in July 2002, he was assigned to work in the kitchen. Plaintiff claims that he was assigned to use "powerwash soap" while in the kitchen and Defendants were aware that powerwash soap is a hazardous and corrosive substance.

On July 9, 2002, Defendant Williams ordered Defendant Olivarria to find inmate volunteers to clean the kitchen. After no inmates volunteered, Plaintiff was summoned to Olivarria's office and ordered to help clean the kitchen. Plaintiff protested because he was already busy and other inmates were sitting around doing nothing. Defendant Castro and Defendant Olivarria then informed Plaintiff that he was being ordered to help clean the kitchen and warned Plaintiff that he was disobeying a direct order. Plaintiff continued to protest but the officers threatened to write Plaintiff up for disobeying a direct order. Plaintiff then complied with the order and reported to Defendant Williams to help clean the kitchen.

Plaintiff informed Williams that he was not trained to perform the work required. However, Williams ordered Plaintiff to ask Olivarria to provide Plaintiff with a drum of powerwash soap. Plaintiff returned to the kitchen with an empty drum and Williams ordered Plaintiff to the drum with hot water and powerwash soap. Plaintiff alleges that the fumes from the powerwash soap caused him to cough. When Plaintiff complained to Defendant Williams, Williams told Plaintiff to "try not to breath[sic] it." (Am. Compl. ¶ 25, ECF No. 64.) Williams then ordered Plaintiff to take the drum

containing the cleaning mixture and a bag of rags and load it on the lift. Plaintiff was then lifted up to clean the ceiling. Plaintiff complains that while he was washing the ceiling, the cleaning mixture got into Plaintiff's eyes and caused burning. After thirty minutes, Plaintiff was completely drenched in the cleaning mixture.

After a while, Plaintiff became nauseous and vomited. However, Defendant Williams warned Plaintiff that if he did not finish the job, Williams would inform Defendant Olivarria. Plaintiff continued to clean "for fear of reprisals." (Am. Compl. ¶ 27, ECF No. 64.) Hours later, Plaintiff's eyes were burning and his hands and feet were irritated. Plaintiff alleges that his skin was numb and began eroding. Plaintiff complained to Williams about his symptoms. When Williams asked Plaintiff if he was trying to get out of work, Plaintiff responded that he was not and wanted to see a doctor. Williams then became angry and told Plaintiff to tell Olivarria that he did not want to work.

Plaintiff then knocked on Olivarria's door. When Olivarria answered he asked, "What the fuck do you want now inmate?" (Am. Compl. ¶ 29, ECF No. 64.) Plaintiff complained about the irritation and burning and a group of officers in Olivarria's office laughed and accused Plaintiff of faking it. Olivarria told Plaintiff to "go back to work, or go get your stuff mother fucker." (Am. Compl. ¶ 29, ECF No. 64.) Plaintiff went back to work because he believed that the officers would kill him.

When Plaintiff reported back to work, Williams ordered Plaintiff to get a rag and get back on the lift. When Plaintiff attempted to get on the lift, he lost his grip and fell on his back. When Plaintiff called for help, Williams activated her emergency response button. Olivarria and other officers arrived and again accused Plaintiff of faking it and told him to get up. Plaintiff remained on the ground and requested treatment. However, Plaintiff was not taken to the clinic but was instead taken to the kitchen office while Olivarria filled out workmen's compensation forms. The officers in the area continued to accuse Plaintiff of faking it.

After Olivarria filled out the forms, Plaintiff was taken to the clinic and placed in a holding cell. After five minutes, Defendant Jane Doe told Plaintiff that the doctor was not available until the following day. Plaintiff demanded to see a doctor and refused to be seen by an "M.T.A." Jane Doe

4

became angry and told Plaintiff to go back to work and submit a request to see a doctor. Jane Doe then instructed Plaintiff to use the eye wash machine and to rinse off his hands and feet. Afterward, Jane Doe told an officer that Plaintiff was ready to return to work. Plaintiff protested and complained that his blood pressure was not taken, he was not asked about any allergies, was still in pain and was not given any medication. Jane Doe then became hostile and gave Plaintiff some ointment. Plaintiff asked for pain medication again but was told that he had to fill out a request to see the doctor. Plaintiff was then taken to his housing unit.

Plaintiff alleges that at some point he refused a direct order "to work pots and pans" and as a result, "was placed on disciplinary report." (Am. Compl. ¶ 50, ECF No. 64.) Plaintiff filed a grievance regarding the incident, but did not receive a response. Plaintiff appeared before a disciplinary committee and argued that he did not want to work pots and pans because it would involve use of powerwash soap. Plaintiff also argued that a doctor recommended that Plaintiff no longer use powerwash soap and could confirm this recommendation if the committee contacted him. Defendant Lowden became hostile and told Plaintiff to shut up and wait in the hall. Plaintiff then heard Olivarria tell Lowden that Plaintiff should be fired. Plaintiff was then handed a job assignment form. Plaintiff contends that the form was falsified, although it is unclear how it was falsified. Plaintiff refused to sign the form and was sanctioned. Plaintiff lost thirty days of good time and placed on "restricted cell time" without his television and radio for ninety days. (Am. Compl. ¶ 50, ECF No. 64.) Plaintiff appealed the decision but did not get a response. Plaintiff also alleges that his property was not returned on time after he returned from restricted cell status. Plaintiff claims that Lowden was deliberately indifferent toward Plaintiff's medical needs because Lowden did not consult with the doctor before attempting to assign Plaintiff to pots and pans.

Plaintiff filed further grievances complaining about the injuries he suffered and requested compensation for the injuries that he sustained. Plaintiff complains that the prison should have covered all costs related to the injuries but was instead charged co-pay fees in excess of $88.34.

On July 10, 2002, Plaintiff requested to see a doctor. However, the M.T.A. became hostile and refused to let Plaintiff into the clinic. Plaintiff complains that Defendant Kim, one of the physicians, was hostile toward Plaintiff because he filed administrative complaints. Plaintiff was

5

eventually escorted to Kim's office and attempted to explain the injuries caused by the powerwash soap. When Kim became hostile, Plaintiff responded by handing Kim an administrative complaint. Kim then told Plaintiff to leave the clinic. Plaintiff complied and contends that he did not receive any treatment for his injuries.

Defendant Olivarria later told Plaintiff not to report to work because of the disciplinary charges against Plaintiff. Plaintiff was later terminated.

Plaintiff claims that Defendant Skribner received a copy of Plaintiff's administrative grievances and knew about Plaintiff's injuries "yet did nothing to reasonably abate it and that those acts or omissions individually, and taken together, were the proximate cause of his denial of medical care." (Am. Compl. ¶ 60, ECF No. 64.) Plaintiff's vague allegations fail to provide a clear explanation as to how Skribner caused the denial of Plaintiff's medical care. Plaintiff also claims that Skribner should have inspected and monitored the use of dangerous substances such as powerwash soap pursuant to the requirements set forth in the department's regulations, but failed to do so. Plaintiff further contends that Skriber failed to train kitchen staff "to meet local requirements." (Am. Compl. ¶ 64, ECF No. 64.)

On March 13, 2003, Plaintiff sustained another injury while working in the kitchen. Plaintiff discovered that the physician on duty was Defendant Kim, and demanded to see a different doctor. Plaintiff's requests were denied. Kim ordered a bed board for Plaintiff's injured back. However, the M.T.A. did not provide one because there were none available. Plaintiff was told to check back later to see if another inmate had turned in a bed board. Plaintiff returned later but was told that he had just missed out because a bed board was provided to another inmate. Plaintiff claims that Kim failed to follow-up on his order to ensure that Plaintiff received a bed board.

After the July 9, 2002 incident, a doctor placed Plaintiff on "lite duty" and restricted his work assignments to non-strenuous activities. Plaintiff claims that the doctor's order prohibited Plaintiff from performing work that "required him to use water, lift more than 10 lbs, using back muscles, and hands and standing for long periods of time." (Am. Compl. ¶ 65, ECF No. 64.) Plaintiff complains that Defendant Olivarria nonetheless reassigned Plaintiff to pots and pans. Plaintiff complained

///

about the pots and pans duty to his doctor and the doctor signed a new order directing Defendants to assign Plaintiff to "lite duty." However, Plaintiff was still assigned to pots and pans.

### III.   Discussion

Plaintiff sets forth his legal claims in two separate "claims for relief." Plaintiff's first claim for relief contends that Defendants violated Plaintiff's rights under the Eighth Amendment by exposing Plaintiff to powerwash soap. Plaintiff's second claim for relief contends that Defendants violated Plaintiff's rights under the Eighth Amendment by failing to provide Plaintiff with proper medical treatment.

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

### A.   Powerwash Soap Claims

Plaintiff contends that Defendants violated his Eighth Amendment rights by exposing Plaintiff to powerwash soap. Plaintiff alleges that the powerwash soap posed an excessive risk to Plaintiff's health because it burned his eyes and irritated his skin. However, it is unclear whether

7

the powerwash soap was inherently dangerous and corrosive to all persons, or whether powerwash soap is dangerous to Plaintiff because Plaintiff is allergic to it.  Plaintiff's complaint contains numerous vague references to Plaintiff's allergies and repeated complaints that prison officials failed to inquire about Plaintiff's allergies.  However, Plaintiff never directly alleges that he is allergic to powerwash soap.  If the risk to Plaintiff's safety stemmed from Plaintiff's allergies, Plaintiff must allege that Defendants were aware that Plaintiff was allergic to the powerwash soap in order to allege deliberate indifference.  Plaintiff has not alleged that Defendants were aware that Plaintiff was allergic to powerwash soap.  Thus, if powerwash soap posed an excessive risk to Plaintiff's health because Plaintiff was allergic to it, Plaintiff fails to state any claims because Plaintiff does not allege that any defendant was aware that Plaintiff was allergic to powerwash soap and deliberately ignored the risk of harm to Plaintiff.

Alternatively, Plaintiff may be alleging that powerwash soap is dangerous to any individual because it is a hazardous and corrosive substance, irrespective of any allergies.  To state a claim, Plaintiff must allege facts that Defendants knew that the hazardous powerwash soap posed an excessive risk to Plaintiff's health.  Several of the allegations made by Plaintiff do not support the inference that Defendants were aware that the powerwash soap posed an excessive risk to Plaintiff's health.  First, it is apparent that Plaintiff himself did not know that the powerwash soap was dangerous.  Plaintiff continued to work after he was drenched in the chemical.  Plaintiff alleges that Defendants should have known about the risk, despite the fact that Plaintiff was apparently unaware of any risk, because they had access to "the appropriate manuals and the material safety data sheets concerning hazardous substances."  (Am. Compl. ¶ 8, ECF No. 64.)  Plaintiff also alleges that Defendants should have received training about hazardous substances.  Plaintiff's factual allegations are conclusory and entirely speculative.  Plaintiff does not allege that any defendant actually read any of these material safety data sheets or actually received any training that specifically informed them of the dangers of powerwash soap.  Further, Plaintiff alleges that when he informed prison officials about his injuries, they claimed Plaintiff was faking his injuries.  Thus, Plaintiff's allegations do not support the inference that Defendants were aware that powerwash soap posed an excessive risk to inmate safety.

Moreover, even if the Court were to assume that Defendants were aware that powerwash soap was a hazardous substance, Plaintiff has not alleged any facts to suggest that Defendants were aware of a risk that Plaintiff would use the powerwash soap in a manner that would seriously threaten his own safety. Plaintiff alleges that he was injured from the powerwash soap because he allowed the cleaning agent to come into contact with his eyes and drench his clothing. Plaintiff has not alleged any facts to suggest that prison officials were aware that Plaintiff would injure himself by soaking himself with the hazardous chemical. It is unclear whether Plaintiff's task was inherently unsafe; if so, it is unclear why Plaintiff did not simply use a smaller amount of cleansing agent while cleaning the ceiling. Additionally, Plaintiff does not allege that any other inmates were injured while using powerwash soap or that other inmates were injured while cleaning the ceiling.

Even if the Court were to accept the assumption that Defendants were aware that powerwash soap was hazardous and that Defendants were also aware of an excessive risk that Plaintiff would use the hazardous chemical in a dangerous manner by allowing the chemical to drench his clothing and come into contact with his eyes, Plaintiff has not alleged any facts that plausibly suggest that Defendants improperly coerced Plaintiff to continue working.

Plaintiff alleges that he eventually went back to work because he believed that Defendants would take reprisals against Plaintiff and would kill him if he did not do so. At this stage in litigation the Court is obligated to accept Plaintiff's allegations as true. However, Plaintiff's subjective reasons for reporting back to work are not relevant to whether Defendants acted with deliberate indifference unless Defendants did something that would reasonably cause Plaintiff to believe that he would be killed if he did not report back to work. Plaintiff has not alleged any facts to support the inference that Defendants would have killed or harmed Plaintiff if he failed to report back to work. Plaintiff does not allege that Defendants threatened Plaintiff or had previously killed an inmate for failing to report to work. Plaintiff's unsupported belief that he would be killed if he did not work is insufficient to hold Defendants liable for violations of the Eighth Amendment.

Finally, Plaintiff argues that Defendants acted with deliberate indifference by directing Plaintiff to return to work after he reported that he was injured. Plaintiff alleges that Defendant

///

9

Olivarria told Plaintiff to go to work or "go get your stuff." The meaning of "go get your stuff" is unclear.

Plaintiff also alleges that Defendants assigned Plaintiff to pots and pans duty despite a doctor's order stating that Plaintiff could not work with water, could not lift heavy objects, could not use his back muscles or his hands, and could not stand for long periods of time. It is unclear why Plaintiff was restricted from performing such duties as working with water, and it is unclear what serious injuries, if any, Plaintiff would be exposed to if he did perform such duties. Plaintiff does not allege that any defendant was aware of any serious risk to Plaintiff's health or safety. Even if the Court were to presume that Defendants were aware of a risk to Plaintiff's health or safety because of the existence of the doctor's order, it is unclear why Plaintiff did not simply choose to quit his job if it was too dangerous. The Court specifically noted in the previous screening order that it was unclear whether Plaintiff had a reasonable opportunity to avoid the dangerous situation by simply quitting his job. If Plaintiff had a reasonable opportunity to avoid the excessive risk to his safety by quitting his job, this militates against the plausibility of the conclusion that Defendants acted with deliberate indifference. Defendants do not act with deliberate indifference if they give Plaintiff the option of either performing pots and pans duties or quitting his job. Given the list of restrictions cited by Plaintiff, it is unclear what job, if any, Plaintiff could have performed. To support a claim for deliberate indifference, Plaintiff would have to allege facts suggesting that Defendants were aware of a risk that an inmate would voluntarily expose him or herself to an excessive risk of harm simply for the sake of maintaining prison employment. Plaintiff has not alleged any facts that suggest that Defendants were aware of a serious risk that Plaintiff would expose himself to a risk of serious injury by exposure to powerwash soap simply to keep his job.

Plaintiff does allege that on a later date, he was placed on disciplinary restricted cell status and lost good time after he refused a direct order to report to a pots and pans assignment. However, it appears that Plaintiff did not try to quit his job but instead asked prison officials to assign Plaintiff to an easier job. Plaintiff alleges that he was disciplined for failing to report to work and failing to obey an officer's orders. Plaintiff does not allege that he made any attempt to quit his job and does not allege that any prison officials or prison regulations prevented Plaintiff from quitting his job.

It appears that Plaintiff wanted to keep his job but refused to work unless he was given the work assignments of his choosing. The Court is unaware of any constitutional provision that requires prison officials to provide Plaintiff with the work assignment of his choice. Plaintiff complains that he refused to obey an officer's order to sign a work assignment form because the form was falsified, but fails to explain how it was falsified. In sum, Plaintiff has not alleged that he was forced to work a job that threatened his health or safety.

Plaintiff's allegations do not rise to the level of a constitutional violation actionable under Section 1983. At most, Plaintiff's allegations demonstrate that Defendants acted negligently by failing to train Plaintiff on how to properly use powerwash soap. While Plaintiff's allegations may be sufficient to support a tort claim for negligence, they do not rise to the level of a constitutional violation actionable under Section 1983. Plaintiff's allegations fail to demonstrate that Defendants acted with deliberate indifference toward a serious risk toward Plaintiff's health or safety. Plaintiff fails to state any cognizable claims under Section 1983 for the exposure to powerwash soap.

**B.     Medical Treatment Claims**

Plaintiff contends that Defendants violated his Eighth Amendment rights by failing to provide Plaintiff with adequate medical care for the injuries that he sustained from the exposure to powerwash soap. "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle, 429 U.S. at 105. To state an Eighth Amendment claim based on deficient medical treatment, a plaintiff must show: (1) a serious medical need; and (2) a deliberately indifferent response by the defendant. Conn v. City of Reno, 572 F.3d 1047, 1055 (9th Cir. 2009) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). A serious medical need is shown by alleging that the failure to treat the plaintiff's condition could result in further significant injury, or the unnecessary and wanton infliction of pain. Id. A deliberately indifferent response by the defendant is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Id. To constitute deliberate indifference, there must be an objective risk of harm and the defendant must have subjective awareness of that harm. Id.

Plaintiff describes three incidents where he was allegedly denied adequate medical treatment. After the powerwash soap incident, Plaintiff was taken to the clinic and was seen by Defendant Jane

11

Doe. Jane Doe instructed Plaintiff on how to rinse his eyes using the eye wash machine, allowed Plaintiff to rinse off his hands and feet, and provided Plaintiff with some ointment. Plaintiff complains that Jane Doe did not take his blood pressure or provide Plaintiff with pain medication. However, Plaintiff fails to allege that he had a serious medical need for either treatment and has not alleged any facts that suggest that Jane Doe was aware of such a need. Accordingly, Plaintiff's allegations do not support the conclusion that Jane Doe's response rose to the level of deliberate indifference.

Plaintiff alleges that during a second incident, Defendant Kim became hostile toward Plaintiff during a visit to the clinic. After Plaintiff handed Kim an administrative complaint, Kim told Plaintiff to leave. Plaintiff does not allege what medical treatment, if any, he needed during the visit, and that his need for medical treatment was serious. Plaintiff also fails to allege any facts suggesting that Kim was aware that Plaintiff had a serious need for medical treatment.

Finally, Plaintiff alleges a third incident where Defendant Kim ordered a bed board for Plaintiff. However, Plaintiff did not receive a bed board because the M.T.A. told Plaintiff that there was none available. When Plaintiff returned later, the M.T.A. told Plaintiff that a bed board was just given away to a different inmate. Plaintiff claims Kim is liable under Section 1983 for failing to follow-up on his order to ensure Plaintiff received a bed board. However, Plaintiff does not allege that he was at risk of serious further injury without the bed board and fails to allege any facts to suggest that Kim was actually aware of a serious risk that Plaintiff would not receive a bed board and would thereby be exposed to an excessive risk to his health or safety. Accordingly, Kim's failure to follow-up on his order does not rise to the level of an Eighth Amendment violation. Plaintiff fails to state any cognizable claims against Defendant Kim for deliberate indifference toward Plaintiff's serious medical needs.

### C.   Retaliation Claims

Plaintiff does not separately delineate a cause of action for retaliation, but his allegations refer to alleged retaliation against his First Amendment rights. In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also

Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff's retaliation allegations are vague and conclusory. Plaintiff alleges his property was confiscated after a disciplinary committee found Plaintiff guilty of rules violations. Plaintiff contends that the committee's actions:

> demonstrates that Defendants have been deliberately indifferent to a serious medical need, and classification decision is unconstitutional because it was convened in retaliation for exercise of First Amendment right. Plaintiff had right to petition courts for redress of his grievances and that harassment, threats, expulsion from work assignment by defendants that interfered with or penalized exercise of that right violated his Eighth Amendment right that Defendant's[sic] "retaliated" against Plaintiff for his involvement in lawsuit.

(Am. Compl. ¶ 54, ECF No. 64.)

Plaintiff's vague allegations are insufficient to support a claim for retaliation. Plaintiff claims that he was retaliated against for petitioning the courts and filing a lawsuit, but does not allege that he filed any lawsuits around the time of his disciplinary hearing. This lawsuit was filed in 2005 and the hearing took place sometime in 2002. Plaintiff does not mention any other lawsuits in his complaint, or allege that any committee members had knowledge of any lawsuits that Plaintiff had filed; it is also unclear why they would retaliate against Plaintiff for filing lawsuits. Further, Plaintiff's own allegations state that he was disciplined for refusing to report to work and for refusing to obey an officer's orders, which Plaintiff admits to doing. There is nothing else in Plaintiff's complaint that suggests any retaliatory motive on the part of the disciplinary committee. Plaintiff fails to state facts that support a plausible claim for relief for retaliation.

///

**D.      No Leave to Amend**

The Court is normally required to provide Plaintiff with notice of the deficiencies in his claims and an opportunity to amend his complaint in order to cure those deficiencies. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to amend should be granted even if no request to amend was made unless the court determines that the pleading could not possibly be cured by the allegation of other facts); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment). However, the Court's previous screening order already informed Plaintiff of the deficiencies in his claims and Plaintiff's fourth amended complaint fails to amend his complaint in a way that meaningfully addresses those deficiencies. Accordingly, the Court will recommend that Plaintiff's complaint be dismissed without leave to amend. See Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)(dismissal with prejudice upheld where court had instructed plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

**IV.    Conclusion and Recommendation**

The Court has screened Plaintiff's complaint and finds that it does not state any claims upon which relief may be granted under Section 1983. Plaintiff was previously notified of the deficiencies in his claims and was provided with the opportunity to amend. Plaintiff's fourth amended complaint failed to remedy the deficiencies in his claims. The Court finds that the deficiencies in Plaintiff's claims are not curable by further amendment of his complaint. Accordingly, it is HEREBY RECOMMENDED that Plaintiff's fourth amended complaint be dismissed, without leave to amend, for failure to state any claims upon which relief can be granted under Section 1983.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised

1  that failure to file objections within the specified time may waive the right to appeal the District
2  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4  IT IS SO ORDERED.

5  **Dated:    October 21, 2010**                   /s/ Sheila K. Oberto
                                                    UNITED STATES MAGISTRATE JUDGE